## SUPREME COURT.

RETIRE F. CROCKER agt. STEPHEN CROCKER and others.

Where the plaintiff, while under an injunction restraining him from making any disposition of his property to the prejudice of his judgment creditors, collusively made an indirect and fraudulent transfer of a large amount of stock to the defendant, his brother, on a secret trust for his (the plaintiff's) own benefit—

*Held*, in an action by the plaintiff against the defendant, his brother, to recover back such stock so transferred, that the sale or transfer was effectual in law, to vest the title absolutely in the defendant, although it appeared that the latter was a party to the fraud.

A misdemeanor is not the source of a civil action in favor of either of the guilty parties. Having trusted each other against the law, they cannot invoke the law against each other. However unjust the transaction, as between the brothers, it is an injury for which the law gives no redress.

*New - York General Term*, 1859.

ROOSEVELT, Judge. The plaintiff, Retire F. Crocker, and the defendant, Stephen Crocker, are brothers. In 1846, Retire was the owner of 400 shares of the stock of " The Union Manufacturing Company of Norwalk," of the par value of $10,000,

and on which he had actually paid instalments to the amount of $9,000. He also held a claim against the company for more than the balance of $1,000, and which was afterwards adjusted at $900; leaving a nominal deficiency of only $100 on the $10,000 to make the whole 400 shares (all then standing in his own name) full stock. He was embarrassed at the time in his pecuniary circumstances, and under an injunction restraining him from making any disposition of his property, including of course the shares in question, to the prejudice of his judgment creditors. He made, notwithstanding, as we view the transaction, an assignment of these shares to his brother, on a secret trust, which he now seeks to enforce, for his own benefit, in violation of the injunction of the court and of the acts of the legislature prohibiting such transfers and declaring them to be misdemeanors. The transfer, it is true, was not direct—it was made by collusively suffering the company to sell the whole 400 shares under pretence, for it can be regarded in no other light, of collecting an unpaid instalment. The private instructions of Rowley, however, who was a sort of agent of both parties and a director of the company, disclose the whole design. They are dated only a few days before the sale. "You can easily arrange," he says, "so that no person will bid beyond $100; two or three bids had better be made; and I depend upon you doing it." And again : "Keep this all close and get Mr. Curtis (he was the president of the company) to arrange it all right." His receipt, too, which he signs, "for Stephen Crocker," of " certificate number 148 in pursuance of the above transfer," shows that the transaction was consummated as it was conceived; the same agent dictating and the same design pervading the whole operation. Even the adjustment of the plaintiff's demand on the company, which was over $1,000, at $900, so as to leave a small deficiency, and which was so adjusted, as the witness Bishop says, by "the said Rowley on the part of the plaintiff as his agent," there is good reason to believe was in pursuance of the same contrivance. For Rowley, notwithstanding the settlement, directed the sale to "go on." And such was his language and manner

that Bishop got the impression from them, he says, " that the plaintiff was in difficulties, and desired the sale to go on in order that the stock might go into the hands of Stephen Crocker or some other third person." Rowley, too, notwithstanding his letter above referred to, was present at the sale. And Stephen, who attended also to make the bid, remarked, immediately after the shares had been knocked down by the auctioneer and before the certificate was delivered, that "it was *a matter of his brother's*." Even the demand of Retire Crocker upon the company was assigned lest it should be reached by creditors, and Rowley became the assignee— Rowley, the friend and attorney of Retire—and without any consideration, actual or pretended. The whole case indeed is full of evidence to show, in the language of Stephen's answer to his brother's complaint (whatever may be thought of the fitness of such an averment from such a relative), that Retire's object was to delay, hinder and defraud his creditors; and that he and his attorney and counsel (meaning Rowley) "connived at, set on foot, and procured the auction sale as part and parcel of the *machinery*, by which he could place the stock or his interest therein beyond the reach of his creditors, &c., but in fact secretly in trust for him, the plaintiff." And, although Stephen swears that he refused so " to implicate " himself, and that he expressly informed Retire that he would only make the purchase on his own account, yet he admits that he "then had reason to believe that Retire contemplated a fraudulent concealment of his property." He insists, however, that even if Retire did so intend, and even if Retire should prove that he, Stephen, was a party to the fraud, yet as between them the sale is effectual in law "to vest the title to the stock absolutely in this defendant."

Whatever may be thought of the moral aspect of this position, taken by a brother against a brother, there can be no doubt of its legal soundness. Courts of law are not organized for the relief of those who violate the law. A misdemeanor is not the source of a civil action in favor of either of the guilty parties. Having trusted to each other against the law,

they cannot invoke the law against each other. A less guilty party may, under some circumstances, be heard against one who is more guilty. But the plaintiff in this case is clearly not within that exception. As the originator of the fraud, if there be a difference, he is the more culpable of the two. His object in the scheme was to defraud his creditors. He seduced his brother to become a party to the wrong. That his brother in turn should defraud him is the legitimate consequence and appropriate punishment of his own attempt to defraud his creditors.

However unjust, therefore, as between the brothers, it may be that the $10,000, so transferred by Retire to Stephen, "in whose honesty, as he says, he relied, and in whom he placed his confidence," should be withheld by the latter and applied by way of pledge to secure his own debts, it is an injury for which the law gives no redress, even if the pledgees were aware of the manner in which the stock was obtained.

The judgment of the special term, except so far as it awards costs to the defendants or either of them, should be reversed and the complaint dismissed, with costs to those defendants also on the appeal.